and we'll move to our last case this morning which is the United States against Orona. All right, both counsel, good morning. Mr. Henderson, you may proceed. Thank you, Your Honor. May it please the court. My name is Peter Henderson. I represent the U.S. Supreme Court. I'm here today with the text of the provision at issue here. The text uses two prepositions in subsection B of section 3, 1.1, by and thereby. As the parties agree, that means there's a causal relationship between two things. The cause is the timely entry of a guilty plea and the effect of that cause is that both the government can avoid preparing for trial and both the court and the government can efficiently allocate their resources. So that causal relationship concerns itself with the trial because the only legal effect that a guilty plea has is to obviate a trial. It doesn't avoid messy sentencing hearings. It doesn't avoid complicated appeals. It gets rid of a trial and as all of you know, trials consume a lot of resources. Both the government in preparing for trial and and the court in actually conducting the trial. That's the aim of section 3, 1.1B. Your Honor, does this whole theory kind of surprise you? It did me. In other words, we're taking a defendant's sentence based on the work of the courts and the counsels. Yeah, I'm not quite sure I understand your question. Do you that you would have this provision? The nature of section 3, 1.1B, I think, is an extra incentive for the defendant. The main part of it is acceptance of responsibility and that's subsection A, right? But what it's saying is we have an institutional interest in preserving everybody. If you're going to plead guilty, do it in a timely manner so that the government and the court don't have to spend extra resources rather than waiting for the day of trial and saying, well, it looks like I'm cooked. I'm going to plead guilty and accept responsibility. I think that's the point of subsection B, is to avoid both the government having to prepare for trial and the court and others actually engaging in the trial. Congress wrote it into the guidelines in 2003 and they assigned the responsibility to determine whether to make this motion to the government because it was in the best position to know how much it had allocated in terms of preparing for trial. That's directly in the Congressional Act that became the commentary to the guideline. So what it is, is it's an incentive to basically relieve the government of extra work in the trial. It doesn't speak about sentencing or appeal. The district court is still going to have to hold a sentencing hearing. It's still going to have to comply with Rule 32. It's still going to have to hear objections and resolve them. And then there will give rise to an appeal. But given the other way around, do we take into consideration in sentencing the time that the government had to spend to prepare for the trial? Yes, we would under Section 3E1.1B. Had Mr. Arona cited, you know, I really don't think the government's got anything. I'm going to test them. And a week before trial, after jury instructions have been filed, statement of cases been filed, witnesses have been lined up, et cetera, he says, all right, you got me. He would have accepted responsibility. He gets the two levels. Those were the original two levels that have always existed since the guidelines have been in existence. But there's an additional level that the Sentencing Commission identified that really is an institutional concern. It says, if you do that early on, that's of more benefit to the criminal justice system because you let the government not have to actually gather all its resources in preparing for trial. But the essence of it is it's only a trial consideration. The parties are going to have to proceed the sentencing. The parties, defendant is entitled to his appellate rights. What went wrong before 2013 was this court and others read some of the phrases in Subsection B in isolation and said, well, the defendant has to allow for the efficient allocation of resources. And so appellate resources, that could be fine, sentencing resources, et cetera. And it read out that causal language of by and thereby. It has to be a result of the guilty plea, not the result of some other proceeding, some other concession that the defendant might make. But what work is the phrase and permitting the government and the court to allocate the resources efficiently doing? What work is that phrase doing on your reading of Subsection B? I grant that Subsection B seems to be focused on timing and trial resources of the government. But we do have that additional language that. The acceptance of responsibility, the offer to plead has to be. Has to permit the government to avoid preparing for trial, for sure, that's one criteria and permitting the government and the court to allocate their resources efficiently, that seems to be folded into saving trial resources, which is the permitting the government to avoid preparing for trial. It has to have some independent meaning. And I think that's the import of our case law, even if we didn't say that very explicitly. I think there are two distinct phases of the criminal prosecution that these two address. Trial preparation occurs, obviously, before trial, and it involves the type of things that the district court set out in its pre-trial order in terms of government preparing all these things that obviously has our witnesses do investigation, etc. But the day that the trial begins, we've got a different set of resources. We've got from the judicial point of view, we've got a courtroom that's dedicated to this trial and all of the people who need to staff that courtroom. We've got the judge sitting on the bench for hours every day, hearing testimony, making rulings. And the prosecution has different expenses that actually come in with trial. So rather than sending officers out to interview witnesses, you have to bring in the witnesses. You have to pay for their expenses. You have to make sure that the witnesses appear in court. You have to allocate prosecutors. I understand what goes into trial prep from the court standpoint, but if wouldn't the Sentencing Commission have said that in Amendment 775? Because this case is all about the meaning of Amendment 775, right? And I think they did that. I mean, they literally copied Judge Rovner's judicial language talking about the interests identified in Section 3E1.1. And so in the amendment, they quote her with that language. And then in the commentary, they add that. But that's not limited to these three points. But it is, because as Judge Rovner explained, the interests that are identified in Section 3E1.1 are trial and not anything that comes after trial. It's not sentencing. Subsection A allows consideration of failure to peacefully admit relevant conduct as a sentencing factor, is it not? It is. And so the government can make the determination of whether subsection A is satisfied is up to the court. And if the government wants to make the decision to say, we oppose acceptance of responsibility, the court makes that when you get to B, we assume that subsection A is satisfied. And so if we assume that subsection A is satisfied, Application Note 1 is just a guide to determining whether subsection A is satisfied. Once a determination or a concession has been made that subsection A is satisfied, we don't then re-argue whether subsection A was satisfied when determining whether the government has been permitted to allocate its resources efficiently. Maybe yes, maybe no. It depends on the case. And it's all about that extra point. So the conditions that need to be satisfied to get the government's motion on subsection B for that extra point reduction, that's in the proviso that the government should not withhold a motion under subsection B based on interest not identified in section 3E1.1. It didn't say, the commission didn't say subsection B only. It said all of 3E1.1. Maybe that's not what it meant, but that's what it said. Maybe it meant exclusively trial resources because that's what subsection B is addressed to. But it didn't say that in this proviso that governs the exercise of the government's discretion here. And that's the way it's, you know, this is not a very user-friendly amendment, let's put it that way. MR. HENDERSON. Mr. Henderson? MR. STEINWALD. Yeah. MR. HENDERSON. Well, you may respond to the chief, and with her indulgence, I have a question, but I don't want to cut you off from responding first to  MR. STEINWALD. You have more experience with this stuff than I do. Because you were in the district court, not me. MR. HENDERSON. Yeah. Mr. Henderson, we have a plea occurring after the first day of trial on an exception. They agree to go with an acceptance of responsibility. How do we apply B in that situation? MR. STEINWALD. B would not apply. And the reason B would not apply is because the defendant did not permit the government to avoid preparing for trial. Because there are two parts of B, right? You have to both permit the government to permit the court and government to efficiently allocate their resources. So the second one is arguably satisfied by pleading guilty. MR. HENDERSON. So if you plead on the day the trial was originally scheduled to go, so the government has prepared. And the defense arguably has, but makes a different decision. So A, is it satisfied? And B still applies with no trial starting? MR. STEINWALD. No. B would not apply because the government has prepared for trial. But your example illustrates exactly the difference between trial preparation and the actual resources involved in a trial. Those are the two different things that B is talking about. So I know that I'm out of time. Well, why don't I save that for now, and if we have more questions, maybe you'll give me a little bit of time for that. I certainly will. This is a much more difficult case than the 10 minutes of argument. MR. HENDERSON. Perhaps. MR. STEINWALD. Yes. We've got a massive circuit split going on, how to read 775, and how to read this guideline. And it's consequential. So let's talk about it. Mr. Whelan. MR. WHELAN. Thank you, Your Honors. And may it please the court. Nathaniel Whelan here on behalf of the United States of America. Your Honor, the guideline text itself is exactly the same as when this court decided the issue in Science Presadio, Nurek, Hicks, where it said that a defendant who falsely contests relevant conduct gives the government a reason to withhold the third point because it has to prepare for a sentencing hearing. And, Chief Judge Sykes, you're exactly right. The reason is because that phrase, and permitting the government and the court to allocate their resources efficiently, has to have some meaning. If the guideline were to stop at permitting the government to avoid preparing for trial, period, stop, the defense's argument would be exactly right. And that's what the guideline said pre-2003. It said, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently. So the guidelines didn't care about the government's resources up until 2003. It just cared about preparing for trial. The Sentencing Commission then makes this change, and they do add in this consideration of the government resources. And that's got to mean something besides trial preparation. Otherwise, you just stop the guideline where it was. And so that's what this court looked at. I'm sorry, can you say it again? It's built in suspenders. It's still, I'm sorry, Your Honor. Maybe it's, you know, built in suspenders drafting, which is commonplace in statutes and guidelines and all kinds of drafting. Contractor pull of built in suspenders. Sure, it could be. It could be, Your Honor. But I guess if this court's going to interpret it that way, it's got to reconsider its prior precedent. And it's basically reading out that language for allocating resources, government resources. That then has no meaning whatsoever. And that's akin to the statutory construction this court should avoid and does avoid in every instance that it can, especially as it relates to the guideline commentary. So the guideline language is the same, and this court's precedent stands. And so I think Chief Judge Sykes, again, you're right that Amendment 775 has really got to be the crux of Mr. Arrona's argument. He has to point to it, and he has to say that Amendment 775 explicitly overruled this court's precedent, that a false denial of offense conduct, which is what we're dealing with here, and relevant conduct, which we're also dealing with, is not a basis for withholding the third point. The guideline amendment, I think everyone would agree with Chief Judge Sykes that maybe this amendment's not clear at its best. But it certainly doesn't give the language that Mr. Arrona wants it to have. It says the government should not withhold such a motion based on interest not identified in 3.1.1, such as whether the defendant agrees to waive his or her right to appeal. And I think the 11th Circuit in Johnson really did a pretty exhaustive analysis of the case law surrounding this guideline and the amendment. And it concluded that the only thing that's really clear is that you can't withhold the third level for the defendants agreeing to waive his or her right to appeal or not waive his or her right to appeal. Well, that's just one illustrative example. I'm not sure that that's the right interpretation of this. No, I think it's beyond this amendment than just appeal right waivers. Yes. No, and I'm sorry, and I didn't mean to say that that is the only impermissible basis to withhold. Clearly, the guideline's saying that you have to look at the interest implicated in 3.1.1. That's got to be the reason for withholding the third level. And as Your Honor noted, that admitting to offense, conduct, and relevant conduct is an interest implicated in 3.1.1. That's what the commentary says. That's if you kind of step back and think about it for a second. That's really when we're talking about acceptance of responsibility kind of divorced from its legal analysis. That's really what we're thinking of. Is the defendant truthfully saying, yes, I committed the crime, you got me, and you got me for all and the full amount of my crime. And here Mr. Arona didn't say that. What Mr. Arona actually said is that the evidence in the Michigan house is not mine. I can't be held responsible for that. And just to be clear, that's above and beyond relevant conduct because his aggravated identity charge was based on the identity of a victim we call MS. And her information is only at the Michigan house. So when he comes and he says, I can't be held responsible for any of that, he's saying, really, I'm not guilty of the aggravated identity theft because, really, I can't be held responsible for that. And that's not acceptance in any concept or any way. And the first two points, the acceptance of responsibility credit. I think the district court probably could have withdrawn the first two levels for the acceptance of responsibility because he did make a false and frivolous denial of offense conduct. We didn't oppose the grant of the two levels because our position was by the time we reached the sentencing hearing, he had accepted responsibility for the full scope of his resources in an inefficient manner, litigating out this issue of the loss and whether he was responsible for the items in the Michigan house. So, your honors, I think it's probably pretty well set out in our briefs, the position of the parties. It's our position that this court's already weighed in on the matter and nothing about amendment 775 clearly overrules this court's precedence. So, what would the court make of all of the preparatory language and explanatory language in amendment 775 about Judge Roedner's concurrence in Davis? Davis, the per curiam was a stare decisis binds us, we're not going to change sides in a circuit split kind of a decision. But the commission appears to be specifically endorsing Judge Roedner's view in that concurrence, along with Lee. Yeah, your honor, I think the commission is endorsing Judge Roedner's view of the quoted portion, which is insisting the defendant waive his right to appeal before he may receive the maximum credit under the guidelines for accepting responsibility serves none of the I think that is right. There is nothing about appeals identified anywhere in 3D1.1. And that's what the commission is saying. And in terms of Lee, I think, I believe it's the 8th circuit that said it right. The commission was aware of Lee. It could have incorporated Lee had it really endorsed that view. It didn't. It only gave the illustrative example of waiving a right to appeal. And that's the issue at play in Judge Roedner's concurrence. It's the issue in plain dividends. And it's really the issue of playing that circuit split that it references and that it's trying to resolve. There's nothing that explicitly rejects the position of this court's precedent and science presidio that says when the government has to deal with a false and frivolous denial of relevant conduct and offense, conduct of sentencing, that's not a basis for withholding the third point. I just want to follow the thread through in the commentary, Mr. Whalen, that Lee says that the 4th circuit's reasoning in Bivens, which was another appeal waiver issue and distinguished between conserving trial resources versus appellate resources, the 2nd circuit took that rationale and interpretation of the guideline and applied it to the government's withholding of the third point 3E1.1B motion based on an unnecessary sentencing hearing. So, I mean, the commission didn't talk about that. So it was trying to accomplish than just getting rid of appellate waivers as a reason to deny or to withhold the motion? Yeah. And, Your Honor, the reference to Lee is a little bit confusing given that the commission never really incorporated Lee's analysis into its amendment. And it's the Jordan case out of the 8th circuit where they do say if the commission intended to exclude contested sentencing hearings, it could have done so, but it didn't. And that's similar to how this court looked at the controlled substance offense career offender guideline and group. The commission knows how to explicitly say things when it wants to. It could have said... Go ahead. Go ahead. It could have said contested sentencing hearings are an issue that is not a basis for withholding the third point. It didn't. And I think this court shouldn't read into the commentary language that just isn't there. How consequential was the third point to the guidelines calculation here? The third point put him in a... Without the third point... I'm sorry, Your Honor. He was at... I'm sure it's in Brace. I just don't remember. Yeah, so he was an offense level 22 criminal history category 6. So he was at 84 to 105. Without the... Or had he been given credit for the third point, he would have been 77 to 96 months. And then there's the mandatory 24-month consecutive on top of that. So he did receive a sentence. And I guess I just don't know how to calculate. He received a sentence below the guidelines plus the 24 months. He received 108. And I believe that was below the guidelines, if not very near the bottom. So unless this court has any further questions, we would ask that you affirm the sentence below. Thank you. All right. Thank you. Whelan, you have a couple of extra minutes to respond to Mr. Whelan's argument. Or Mr. Whelan. Thank you. Thank you, Your Honor. And to clarify, yeah, this point essentially cost my client seven months in prison. He got a low end of the guideline sentence. It's seven months higher than it would have been. The circuit split, and of course, the majority of the circuits are on Mr. Arona's side about contested sentencing hearings, is about an interpretation of the text of Section 3.1.1. And the key thing that the circuits that have found contested sentencing hearings are not the subject of Subsection B have pinpointed in on is that causal relationship. Mr. Whelan correctly asserts that when the government has to expend resources it didn't expect to have to expend, that's inefficient. But the guilty plea has to be the cause of the ability for the government to not have to spend those resources. And a guilty plea by itself, it can't be that cause. The effect of the guilty plea is to avoid a trial. It does not guarantee anything about sentencing. And especially when somebody pleads open, when somebody pleads without a plea agreement, the government cannot expect that anything other than the bare facts of what he has admitted are going to serve as the basis of the sentence. As you all well know, sentencing in the federal system is 90% about relevant conduct. It's not about the bare facts because we have a sort of real offense system. And so that's the textual problem for the government, is that we have a causal. Will your interpretation, if we adopt it, of 3E1.1 and 775, move all of the action to Subsection A so that when there's challenges over just the basic acceptance of responsibility, they will be harder fought for the two points? If they're unavailable as a discussion topic for the third point? Yes. Practical effect of your interpretation. And that ought to be the practical effect. Application Note 5 tells us acceptance of responsibility is up to the judge. And what we're trying to do at sentencing, if the parties really disagree on the application of these factors, one party shouldn't have the unilateral ability to say, well, I disagree with you, so I'm going to actually affect your sentence on grounds that aren't related to saving the government the expense of trial. So yeah, we accept that consequence. And as what happened in the district court, those two points were valuable. The three points would have been even more valuable. This objection might have gone away sooner. So yeah, I think that is the practical consequence, but it's the consequence of the text. That's what we're hanging our head on. So we would ask to reverse. Thank you. Great. Thank you very much. So thanks to both counsel. The case is taken under advisement and that concludes our cases for today.